# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

LYLE FIKSE,

        Plaintiff,

vs.

STATE OF IOWA THIRD JUDICIAL
DISTRICT DEPARTMENT OF
CORRECTIONAL SERVICES and
LINN HALL, in his Official Capacity as
Director Of State Of Iowa Third Judicial
District Department of Corrections
Services,

        Defendants.

No. C 08-4071-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS**

————————

## TABLE OF CONTENTS

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.*  *Standards For A Motion To Dismiss* . . . . . . . . . . . . . . . . . . . . . 6
    *B.*  *The 3rd JDDOCS's Motion To Dismiss* . . . . . . . . . . . . . . . . . . 8
        *1.*  *Eleventh Amendment immunity to ADEA claims* . . . . . . . . . . 8
        *2.*  *Waiver by accepting federal funds* . . . . . . . . . . . . . . . . . . 9
    *C.*  *Hall's Motion To Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *1.*  *Injunctive relief against a state official* . . . . . . . . . . . . . . 14
        *2.*  *Adequacy of the pleading of the claim against Hall* . . . . . . . 18

*III.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C an a state agency and its director, sued in his official capacity, raise Eleventh Amendment sovereign immunity to an agency employee's claims for damages and injunctive relief from age discrimination in violation of the Age Discrimination In Employment Act (ADEA), 29 U.S.C. § 621 *et seq*.? The defendants have moved to dismiss on Eleventh Amendment and other grounds, but the plaintiff contends that his suit is viable against the agency, because the agency receives federal funding, and against the agency's director, because the complaint adequately alleges a claim for injunctive relief from imminent or ongoing violations of rights under the ADEA. The court's resolution of the defendants' motions to dismiss is, admittedly, overdue.[1]

## I. INTRODUCTION

On August 19, 2008, plaintiff Lyle Fikse filed his original Complaint (docket no. 1) against defendant State of Iowa Third Judicial District Department Of Correctional Services (3rd JDDOCS) alleging age discrimination in violation of the ADEA. Somewhat more specifically, Fikse alleges that he was and continues to be employed by the 3rd JDDOCS as a residential officer at the Sheldon Residential Treatment Facility in Sheldon, Iowa; that he is over forty years of age; that he has repeatedly sought and been denied promotions to the position of probation officer; and that younger workers have been promoted instead, despite his experience, good performance reviews, and seniority. Therefore, Fikse alleges willful age discrimination by the 3rd JDDOCS in violation of the

---

[1] The defendants' motions were fully briefed on January 14, 2009. This court's heavy case load and crowded schedule notwithstanding, the court regrets that this matter was not resolved sooner.

ADEA, and seeks back pay and benefits, front pay and benefits, training, promotions, and seniority; damages for past and future suffering, emotional distress, loss of enjoyment of life, and other non-pecuniary losses; liquidated damages for willful discrimination; costs, expenses, and attorney fees; and such other relief as the court deems proper.

On October 23, 2008, the 3rd JDDOCS filed a Motion To Dismiss (docket no. 4), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Fikse's Complaint fails to state a claim upon which relief can be granted, because his ADEA claim is barred by the 3rd JDDOCS's Eleventh Amendment sovereign immunity. Fikse filed a Resistance (docket no. 7) to that motion on November 18, 2008, arguing that the 3rd JDDOCS waived its Eleventh Amendment immunity by accepting federal funding, citing 42 U.S.C. § 2000d-7(a)(1) and *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000), and, in the alternative, asserting that his case should not be dismissed in its entirety, because of his soon-to-be-filed motion to amend his Complaint to assert a claim for injunctive relief against the director of the 3rd JDDOCS in his official capacity.

Fikse did, in fact, file a Motion To Amend Complaint (docket no. 10) on November 21, 2008, seeking to add as an additional defendant Linn Hall, in his official capacity as the director of the State of Iowa Third Judicial District Department of Correctional Services. By Order (docket no. 14) dated December 5, 2008, the court granted Fikse's Motion To Amend, and his Amended Complaint (docket no. 15) was filed that day. In addition to adding the new defendant, Fikse's Amended Complaint adds a new paragraph to his prayer asking the court to enjoin defendant Hall permanently from engaging in or continuing practices, polices, customs, and usages shown to be violative of the ADEA and requiring that Fikse be promoted to the position of probation officer.

On December 8, 2008, defendant Hall filed a Motion To Dismiss (docket no. 19), pursuant to Rule 12(b)(6), asserting that Fikse's Amended Complaint fails to state a claim

against him upon which relief can be granted, and referring the court to the defendants' Brief In Support Of Defendants' Motion To Dismiss and Reply Brief In Support Of Motion To Dismiss (docket no. 17), filed the same day. In the reply portion of that brief, the 3rd JDDOCS asserts that 42 U.S.C. § 2000d-7(a)(1) does not provide an unambiguous waiver of the States' Eleventh Amendment immunity to claims pursuant to the ADEA as the result of accepting federal funding and, in any event, that the 3rd JDDOCS has not received any federal funding in the last three years, even if § 2000d-7(a)(1) might otherwise waive sovereign immunity. In the portion of the brief supporting defendant Hall's Motion To Dismiss, defendant Hall asserts that he is not an "employer" within the meaning of the ADEA; that injunctive relief under the ADEA may not override Eleventh Amendment immunity; that, to the extent that injunctive relief may be available against a state official without violating the Eleventh Amendment, a general injunction to "follow the law" is not appropriate in the absence of an imminent or ongoing constitutional violation, which cannot be shown here; and that, even if equitable relief were otherwise available against him, in his official capacity, front pay cannot be awarded against the State, there is no current vacancy for a probation officer, and future vacancies may be subject to a hiring freeze and budget cuts.

On January 14, 2009, Fikse filed a Resistance To Defendant Linn Hall's Motion To Dismiss And Supplement To Plaintiff's Resistance To Defendant State Of Iowa Third Judicial District Department of Correctional Services' Motion To Dismiss (docket no. 25), asserting that defendant Hall is a proper party to his lawsuit, if the 3rd JDDOCS is dismissed, that there is no Eleventh Amendment immunity bar to his claim for injunctive relief against Hall, and that his Amended Complaint does adequately allege imminent and ongoing violations of the ADEA. More specifically, he asserts that he has alleged an ongoing pattern of conduct in violation of the ADEA that has occurred and will continue

4

to occur with each of his applications for promotion. In further support of his argument that the 3rd JDDOCS has waived sovereign immunity, Fikse argues that discovery is required to determine the extent to which federal funding to the Iowa Department of Correctional Services is, in turn, for the benefit of each judicial district's Department of Correctional Services, so that dismissal is premature.

In short, the defendants' motions to dismiss present the following questions: (1) Does the ADEA properly abrogate the States' Eleventh Amendment sovereign immunity to an age discrimination claim against a state agency? (2) If not, is an ADEA claim nevertheless permissible against a state agency pursuant to 42 U.S.C. § 2000d-7(a)(1) if the state agency receives federal funding, thereby waiving Eleventh Amendment immunity? (3) Can a state agency employee assert a claim for injunctive relief from violations of the ADEA against the state agency's director in his or her official capacity, notwithstanding the state agency's Eleventh Amendment immunity? and (4) Has Fikse adequately alleged a claim for injunctive relief against the state agency's director, in his official capacity? The answers to the first two questions will determine the viability of Fikse's ADEA claim against the 3rd JDDOCS, while the answers to the latter two questions will determine the viability of Fikse's ADEA claim for injunctive relief against defendant Hall. The court will consider these pairs of questions in turn. First, however, the court must consider the standards applicable to the defendants' motions to dismiss for failure to state claims upon which relief can be granted.

## II. LEGAL ANALYSIS

### A. Standards For A Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[2] In a recent decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright &

---

[2]Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, the recent amendment did not change the standards for a Rule 12(b)(6) motion.

A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, ___ F.3d ___, ___, 2009 WL 1794691, *3 (8th Cir. June 25, 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, ___ F.3d ___, ___, 2009 WL 1740236, *3 (8th Cir. June 22, 2009) (quoting *Bell Atlantic*, 550 U.S. at 570).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, ___ F.3d at ___, 2009 WL 1794691 at *3 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, ___ F.3d at ___, 2008 WL 1740236 at *3 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*,

514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

## B. The 3rd JDDOCS's Motion To Dismiss

As noted above, the 3rd JDDOCS asserts that Fikse's ADEA claim against it should be dismissed, because it has Eleventh Amendment sovereign immunity to any such claim. While Fikse concedes that the 3rd JDDOCS might otherwise have sovereign immunity to his ADEA claim, he argues that the 3rd JDDOCS has waived that immunity by accepting federal funding.

### 1. Eleventh Amendment immunity to ADEA claims

As both parties now acknowledge, the Supreme Court has directly addressed the question of whether the ADEA properly abrogates a State's or a state agency's Eleventh Amendment immunity in *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). Although the Court recognized that Congress attempted to abrogate Eleventh Amendment immunity to claims of age discrimination in violation of the ADEA in 29 U.S.C. § 623(a)(1), the Court held that the ADEA was not a proper exercise of Congress's constitutional authority, because it exceeded Congress's power under § 5 of the Fourteenth Amendment. *See Kimel*, 528 U.S. at 92; *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 537 (2002) ("*Kimel* held that the 'ADEA does not validly abrogate the States' sovereign immunity,'" quoting *Kimel*, 528 U.S. at 92). Thus, the ADEA does not, itself, abrogate the 3rd JDDOCS's sovereign immunity to Fikse's ADEA claim.

## 2. *Waiver by accepting federal funds*

Fikse argues, at least in the alternative, that the 3rd JDDOCS waived its Eleventh Amendment sovereign immunity by accepting federal funds. Fikse bases this argument on 42 U.S.C. § 2000d-7(a)(1) and *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000).

Section 2000d-7(a)(1) provides, in pertinent part, as follows:

> (a) General provision
>
> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], *or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.*

42 U.S.C. § 2000d-7(a)(1) (emphasis added). Fikse admits that the ADEA is not one of the expressly identified statutes to which this "waiver by accepting federal funds" statute applies, but nevertheless argues that the ADEA falls within the italicized "catchall" provision. The 3rd JDDOCS argues that this statute does not provide an unambiguous waiver of a State's Eleventh Amendment immunity to ADEA claims.

In *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000), which involved a claim of disability discrimination in educational services, not in employment, the Eighth Circuit Court of Appeals noted that the Rehabilitation Act, 29 U.S.C. § 794, which is specifically listed in 42 U.S.C. § 2000d-7(a)(1), expressly "prohibits 'any program or activity' that receives federal financial assistance from discriminating against a qualified individual with a disability." *Jim C.*, 235 F.3d at 1080. The court then held,

The Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504. 42 U.S.C § 2000d-7. Since Section 504 covers only the individual agency or department that accepts or distributes federal funds, this waiver requirement is limited in the same way. By accepting funds offered to an agency, the State waives its immunity only with regard to the individual agency that receives them. A State and its instrumentalities can avoid Section 504's waiver requirement on a piecemeal basis, by simply accepting federal funds for some departments and declining them for others. The State is accordingly not required to renounce all federal funding to shield chosen state agencies from compliance with Section 504.

*Jim C.*, 235 F.3d at 1081. The court then rejected the defendant's arguments that the pertinent part of the Rehabilitation Act exceeds Congress's spending power. *Id.* at 1081-82.

The decision in *Jim C.* provides almost no insight here, however, because unlike the Rehabilitation Act, the ADEA is an employment discrimination act, and it does not condition receipt of federal funds on a waiver of sovereign immunity. Indeed, every court to consider the question has held that § 2000d-7(a)(1) does not create a waiver of Eleventh Amendment immunity to ADEA claims based on a state agency's acceptance of federal funds. As the Fifth Circuit Court of Appeals recently held, albeit in an unpublished decision,

An accurate reading of 42 U.S.C. § 2000d-7(a)(1) invalidates [the ADEA plaintiff's] argument. The question is whether the ADEA is a "Federal statute prohibiting discrimination by recipients of Federal financial assistance." Clearly it is not. The ADEA prohibits age discrimination by "employers," not by those who receive federal financial assistance. The fact that many employers receive federal

> assistance does not mean that the ADEA is a "statute
> prohibiting discrimination by recipients of Federal financial
> assistance." Texas's general acceptance of federal funding
> does not waive its Eleventh Amendment immunity from
> [ADEA age] discrimination suits.

*Sullivan v. University of Texas Health Science Ctr.*, 217 Fed. Appx. 391, 395, 2007 WL
519744, *3 (5th Cir. 2007). The Fifth Circuit Court of Appeals concluded in *Sullivan* that
"Congress has not abrogated Eleventh Amendment immunity from ADEA claims, and
Texas has not voluntarily waived its immunity," so that the Eleventh Amendment barred
the plaintiff's ADEA claims.

The federal district courts to consider the question have used essentially the same
reasoning as the *Sullivan* court to hold that § 2000d-7(a)(1) does not result in a waiver of
sovereign immunity to the ADEA for states or state agencies that accept federal funds. *See
Grizzle v. Oklahoma Dep't of Veterans Affairs*, 2006 WL 3227880, *5 (E.D. Okla. Nov.
2, 2006) (finding no abrogation or waiver of Eleventh Amendment immunity to ADEA
claims after observing, "[A]lthough Congress can condition receipt of federal funds on a
waiver of sovereign immunity, *see, e. g., College Savings [Bank v. Florida Prepaid
Secondary Educ. Expense Bd.*, 527 U.S. [666,] 686 [(1999)] ('[I]n the exercise of its
spending power, [Congress may] condition its grant of funds to the States upon their taking
certain actions that [it otherwise] could not require them to take.'), it has not done so in
connection with the ADEA. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 381
(M.D. Pa. 2001) (analyzing the Civil Rights Remedies Equalization Act, 42 U.S.C.
§ 2000d-7(a)(1) and its relation to the ADEA)."); *Brown v. Washington Metro Area
Transit Auth.*, 2005 WL 1941630, *5 (D. Md. Aug. 12, 2005) (also finding that a state
agency had sovereign immunity to ADEA claims after observing, "[C]ontrary to Plaintiff's
assertion, the ADEA is outside the scope of [42 U.S.C. § 2000d-7(a)(1). The ADEA is

not explicitly mentioned in the text of the statute. 42 U.S.C. § 2000d-7(a)(1). Nor can the ADEA be considered a 'federal statute prohibiting discrimination by recipients of federal financial assistance,' *id.*, as it is not a Spending Clause enactment, and does not contain language specifically addressing such recipients. *Compare* Age Discrimination Act of 1975, 42 U.S.C. § 6101 ('It is the purpose of this chapter to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance.'), *with* ADEA, 29 U.S.C. § 623(a) ('It shall be unlawful for an employer to limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age. . . .'").

This court agrees with these courts' reading of § 2000d-7(a)(1) as inapplicable to the ADEA, because the ADEA simply is not a "Federal statute prohibiting discrimination by recipients of Federal financial assistance." Therefore, the 3rd JDDOCS cannot have waived sovereign immunity pursuant to § 2000d-7(a)(1), even if it accepted federal funding.[3] Fikse makes no other argument that the 3rd JDDOCS has waived its sovereign

---

[3]Because § 2000d-7(a)(1) provides no waiver of a state's sovereign immunity to an ADEA claim by acceptance of federal funding, the court need not reach the 3rd JDDOCS's alternative argument that it has not received any federal funds for the last three years, so that, as a matter of fact, there has been no waiver by accepting federal funds. Similarly, the court need not consider Fikse's argument that discovery is required to determine what benefit the 3rd JDDOCS may have received from federal funding to the State of Iowa Department Of Correctional Services. Fikse's argument appears to be foreclosed by the holding in *Jim C.*, 235 F.3d at 1081, that, by accepting funds offered to an agency, the State waives its immunity only with regard to the individual agency that receives them. Moreover, the 3rd JDDOCS's alternative argument, and Fikse's response, raise factual issues not properly before the court on a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 & n. 3 (8th Cir. 1996). (continued...)

immunity to an ADEA claim.

Moreover, it is clear that, while it may be possible to sue a state official, in his or her official capacity, for prospective injunctive relief without violating the Eleventh Amendment, the same is not true of states or state agencies, so that claims against the state agency should be dismissed, even if claims against state officials for prospective injunctive relief can go forward. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (a § 1981 suit by a student for injunctive relief against a state university and university officials was viable against the state officials, in their official capacities, but the district court erred in permitting the claim for injunctive relief to proceed against the university). Thus, the 3rd JDDOCS is entitled to be dismissed from this lawsuit, on sovereign immunity grounds, even if the lawsuit is otherwise viable, as to some form of relief, against defendant Hall, in his official capacity.

Therefore, Fikse's Complaint and Amended Complaint fail to state claims against the 3rd JDDOCS on which relief can be granted, because the 3rd JDDOCS's sovereign immunity to an ADEA claim is an "insuperable bar" to such claims. *See Benton* 524 F.3d at 870 ("Where the allegations show on the face of the complaint that there is some

---

[3](...continued)
The court declines to convert the present motion to dismiss into a summary judgment motion on the basis of a legally irrelevant factual dispute. FED. R. CIV. P. 12(d) (a Rule 12(b)(6) motion involving matters outside of the pleadings may be converted to a motion for summary judgment, but only after all parties are given a reasonable opportunity to present all the material that is pertinent to the motion); *Skyberg v. United Food and Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n.2 (8th Cir. 1993) (even where matters outside of the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss," and where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture").

insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." (Citing *Parnes*, 122 F.3d at 546). Defendant 3rd JDDOCS's Motion To Dismiss will be granted.

### C. Hall's Motion To Dismiss

Defendant Hall, the director of the 3rd JDDOCS, also seeks dismissal of the ADEA claim against him on Eleventh Amendment and other grounds. Fikse argues that, whatever the viability of his damages claims against the 3rd JDDOCS, his claim for injunctive relief against defendant Hall, in his official capacity, is viable.

#### 1. Injunctive relief against a state official

Hall argues, first, that he is not an "employer" within the meaning of the ADEA and that injunctive relief under the ADEA may not override Eleventh Amendment immunity. Fikse argues that courts have recognized the viability of a claim for injunctive relief from violations of the ADEA against state officials, in their official capacities.

It does not appear that the Eighth Circuit Court of Appeals has squarely addressed the question of whether a state agency employee can assert a claim for injunctive relief from violation of the ADEA against the state agency's director, in his or her official capacity, notwithstanding the state agency's Eleventh Amendment immunity. The Eighth Circuit Court of Appeals has, however, recognized the general principle that state officials may be sued, in their official capacities, for injunctive relief, even when their agency has Eleventh Amendment immunity. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies. *See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 443 F.3d 1005, 1017 (8th Cir. 2006), *vacated on other grounds*,

--- U.S. ----, 127 S. Ct. 3000, --- L. Ed. 2d ---- (2007) (recognizing that only state officials, as opposed to state agencies, can be sued for prospective injunctive relief and dismissing claims against state agency); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Alabama v. Pugh*, 438 U.S. 781, 781-82, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978).").  Similarly, in a case alleging disability discrimination in violation of the Americans with Disabilities Act (ADA) by state officials, admittedly in the denial of an application for re-registration as a securities agent, not in employment, the Eighth Circuit Court of Appeals recognized that "under *Ex Parte Young* and its progeny, private individuals can in fact sue state officials under the ADA for prospective, injunctive relief only." *Grey v. Wilburn*, 270 F.3d 607, 609 (8th Cir. 2001) (citing *Gibson v. Arkansas Dep't of Correction*, 265 F.3d 718 (8th Cir. 2001)).  Thus, the Eighth Circuit Court of Appeals has not recognized Eleventh Amendment immunity as an insuperable bar to claims for injunctive relief against state officials in their official capacities.  *See Benton* 524 F.3d at 870 ("Where the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." (Citing *Parnes*, 122 F.3d at 546)).

As Fikse contends, the First Circuit Court of Appeals has expressly recognized that the ADEA can be enforced via a claim for injunctive relief against a state official, in his or her official capacity, in *State Police for Automatic Retirement Ass'n v. DiFava*, 317 F.3d 6 (1st Cir. 2003).  In *DiFava*, the First Circuit Court of Appeals addressed the ADEA claims of a group of forty-five police officers, the so-called *Gately* plaintiffs, employed by the former Metropolitan District Commission Police, but facing mandatory retirement ten years earlier than anticipated pursuant to a mandatory retirement provision in a Massachusetts statute.  *DiFava*, 317 F.3d at 8.  In the pertinent part of the decision, for present purposes, the First Circuit Court of Appeals concluded that the *Gately*

plaintiffs' claim for injunctive relief from violations of the ADEA against state officials, in their official capacities, was viable, notwithstanding the Supreme Court's decision in *Kimel*, 528 U.S. 62, as follows:

> The *Kimel* Court reiterated the Supreme Court's earlier holding in *Wyoming,* 460 U.S. 226, 103 S. Ct. 1054, 75 L. Ed. 2d 18 (1983), that the ADEA constitutes a valid exercise of Congress's power under Article I, § 8, cl. 3 "'[t]o regulate Commerce . . . among the several States.'" *Kimel,* 528 U.S. at 78, 120 S. Ct. 631 (quoting *Wyoming,* 460 U.S. at 243, 103 S. Ct. 1054). Moreover, nothing was said in *Kimel* to question *Wyoming*'s determination that Congress had extended the ADEA to cover state and local governments and their employees in addition to private firms and individuals. Nor did *Kimel* alter *Wyoming*'s holding that the ADEA's regulation of state and local government workers did not violate the Tenth Amendment or other provisions of the Constitution. *Wyoming,* 460 U.S. at 232-243, 103 S. Ct. 1054. All that *Kimel* held was that—although the ADEA remained a valid exercise of Congress's power under the Commerce Clause—this fact alone did not, and could not, enable Congress to override a state's Eleventh Amendment immunity against suit. 528 U.S. at 91, 120 S. Ct. 631. Hence *Kimel* did not declare the standards of the ADEA invalid nor inapplicable as they pertained to the states, but simply endorsed the rights of states and political subdivisions to enforce against ADEA lawsuits the immunity conferred by the Eleventh Amendment.
>
> The Eleventh Amendment, however, does not confer upon the states a total immunity against suit. *Alden v. Maine,* 527 U.S. 706, 755, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). *Kimel* involved a private action for monetary damages. Neither *Kimel,* nor Eleventh Amendment jurisprudence, prevents individuals, such as the *Gately* plaintiffs, from obtaining injunctive relief against a state based upon the ADEA pursuant to *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). *See Bd. of Trs. of the Univ.*

> *of Ala. v. Garrett,* 531 U.S. 356, 374 n. 9, 121 S. Ct. 955,
> 148 L. Ed. 2d 866 (2001) (private individuals may sue for
> injunctive relief to enforce the standards of the ADA under *Ex
> parte Young*); *Laro v. New Hampshire,* 259 F.3d 1, 17 (1st
> Cir. 2001).
>
> Indeed, the United States itself may enforce the
> standards of the ADEA against states both in actions for
> money damages and for injunctive relief. *See Garrett,* 531
> U.S. at 374 n. 9, 121 S. Ct. 955; *Alden,* 527 U.S. at 755, 119
> S. Ct. 2240; *Laro,* 259 F.3d at 17. The EEOC, an agency of
> the United States, was a party to the suit that resulted in the
> issuance of the permanent injunction that SPARA now seeks
> to invalidate. In *Alden* the Court stated that "[i]n ratifying the
> constitution, the States consented to suits brought by other
> States or by the Federal Government." 527 U.S. at 755, 119
> S. Ct. 2240. Thus, even though private individuals are
> precluded by the Eleventh Amendment from suing the
> Commonwealth for money damages for violations of the
> ADEA, the provisions of the ADEA remain fully applicable
> and may be enforced against the Commonwealth in the manner
> described. *Kimel* has not so altered the legal landscape as to
> invalidate the permanent injunction issued in *Gately.*

*DiFava*, 317 F.3d at 11-12.

This court concludes that, in light of *DiFava*, *Monroe*, and *Grey*, an action for prospective injunctive relief from violations of the ADEA is viable against a state official, in his or her official capacity.

Hall nevertheless contends that he is not an "employer" within the meaning of the ADEA, and there is no individual liability under the ADEA. *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007) (the ADEA does not countenance individual liability); *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006) (same); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 610 n. 2 (7th Cir. 2001) (same); *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674 (5th Cir. 2001) (same);

*Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (same); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994) (same). Hall's argument might have some merit, if this action were against him in his *individual* capacity, but it is not. This action is against him in his *official* capacity and only for injunctive relief. Hall's reliance on *Swanson v. Department of Health, State of Colo.*, 773 F. Supp. 255, 258 (D. Colo. 1991), is misplaced, because the holding in that case that ADEA plaintiffs can sue a state agency, notwithstanding Eleventh Amendment immunity of the state, but cannot sue individual state officials, is contrary to *Kimel*, *Ex Parte Young* and its progeny, and other decisions in the last two decades recognizing the viability of claims for injunctive relief against state officials in their official capacities.

Therefore, Fikse's claim against Hall, in his official capacity, for prospective injunctive relief from violations of the ADEA is viable.

### 2. *Adequacy of the pleading of the claim against Hall*

Hall contends that, even if Fikse's claim against him is theoretically viable, Fikse has failed to allege an imminent or ongoing constitutional violation, and is not entitled to a general injunction just "to follow the law"; that front pay is not an equitable remedy available against the State; and that lack of vacancies and funding may preclude Fikse's promotion to or instatement in a position as a probation officer. Fikse asserts that he has adequately pleaded his claim for injunctive relief against Hall.

In *Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001), the Eighth Circuit Court of Appeals recognized that "*Ex Parte Young* simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law." *Randolph*, 235 F.3d at 348 (citing *Ex Parte Young*, 209 U.S. at 159-60). Similarly, in *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635 (2002), the Supreme Court explained, "In determining whether the doctrine of *Ex parte Young* avoids

an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland*, 535 U.S. at 645 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment), and also citing *id.* at 298-299 (Souter, J., Joined by Stevens, Ginsburg, and Breyer, JJ., dissenting)). Giving Fikse's Amended Complaint a liberal reading, *see Eckert*, 514 F.3d at 806, he has alleged that he has been and continues to be discriminated against on the basis of age by the 3rd JDDOCS and Hall, and he seeks prospective injunctive relief in the form of an injunction against continuing practices that violate the ADEA and requiring his promotion to the position of probation officer. The court believes that these allegations are sufficient to overcome a motion to dismiss; whether Fikse can survive a motion for summary judgment on essentially the same ground is a matter not now before the court.

Once the court in *Grey v. Wilburn*, 270 F.3d 607 (8th Cir. 2001), established that an ADA claim for injunctive relief only could be brought against state officials, in their official capacities, the key question concerning adequacy of the pleading of such a claim was whether the plaintiff's prayer for relief was "in fact directed against the individual defendants." *Grey*, 270 F.3d at 609. The court concluded that, although the plaintiff's prayer for relief was "not well-crafted under this [ADA] claim," it was nevertheless clear, "viewing the allegations as a whole," that the plaintiff's charges were "in fact directed against the individual defendants." *Id.* Moreover, the court ruled, "To remove all doubt, on remand, plaintiff should be allowed permission to amend his prayer to expressly seek prospective, injunctive relief from the state officials in their official capacities." *Id.* Here, Fikse expressly alleges that "DEFENDANT HALL has been the individual responsible for

the denial of promotions to PLAINTIFF FIKSE." Amended Complaint, ¶ 16. That allegation is sufficient to satisfy *Grey*'s pleading requirement.

Hall contends, further, that the claim against him for equitable relief cannot include front pay or back pay, and that promotion or instatement may not be possible. Fikse does not pray for either front pay or back pay in his prayer for prospective injunctive relief, however. *See* Amended Complaint, Prayer, ¶ (e) (praying for a permanent injunction against Hall enjoining him "from engaging in or continuing practices, polices, customs, and usages shown to be violative of the ADEA, and that Plaintiff be promoted to the position of Probation Officer"). Thus, any bar on front pay or back pay awards against a state official, in his official capacity, would not present any insuperable bar to the injunctive claim that Fikse has actually asserted here. *See Benton* 524 F.3d at 870 ("Where the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." (Citing *Parnes*, 122 F.3d at 546)). Hall's contention that promotion or instatement may not be possible raises a fact question that the court may not properly resolve on a motion to dismiss.

Therefore, defendant Hall's Motion To Dismiss the claim for injunctive relief against him, in his official capacity, will be denied.

### III. CONCLUSION

Upon the foregoing,

1.        Defendant 3rd JDDOCS's October 23, 2008, Motion To Dismiss (docket no. 4) is **granted**, and the 3rd JDDOCS is **dismissed** from this action, because the 3rd JDDOCS has Eleventh Amendment sovereign immunity to plaintiff Fikse's ADEA claim;

2. Defendant Linn Hall's December 8, 2008, Motion To Dismiss (docket no. 19) is **denied** as to plaintiff Fikse's claim for injunctive relief in paragraph (e) of his Amended Complaint, but **granted** as to any claim for compensatory or other relief;

3. This action will be restyled Lyle Fikse v. Linn Hall, in his Official Capacity as Director Of State Of Iowa Third Judicial District Department of Correctional Services;

4. Plaintiff Fikse is granted **to and including July 13, 2009,** to file a Second Amended Complaint asserting only his claim for prospective injunctive relief against defendant Hall in his official capacity, and defendant Hall shall have **ten days** after the filing of the Second Amended Complaint to file his Answer thereto.

**IT IS SO ORDERED.**

**DATED** this 2nd day of July, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA